# EXHIBIT A

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| **STEPS TO SUCCESS, INC.,** ) | |
| ) | |
| Plaintiff, ) | No. 07 CH 37426 |
| ) | |
| v. ) | Judge Mary Anne Mason |
| ) | |
| **KUMON NORTH AMERICA, INC.,** ) | |
| ) | |
| Defendant. ) | |

**AFFIDAVIT OF PALAVI SHAH IN SUPPORT OF**
**MOTION FOR PRELIMINARY INJUNCITON**

I, Pallavi Shah, state on personal knowledge that:

1.  I am the President of Plaintiff Steps To Success, Inc.

2.  I have read the Complaint in this matter and state that the facts set forth therein are true and accurate.

3.  Steps To Success, Inc. owns and operates a Kumon Learning in Hoffman Estates, Illinois.

4.  For the last fifteen years, I invested an enormous amount of time, money and effort into my Kumon business, built strong goodwill and established relationships with its numerous repeat customers.

5.  Throughout my fifteen years as a Kumon franchisee, I always paid my fees on time.

6.  A copy of my most recent franchise agreement and the Illinois addendum I attached hereto as Exhibit A.

7. I paid over $750,000 in royalties to Kumon and never paid a late fee.

8. I grew the business from 15 enrolled students at start up to almost 400 students now enrolled at my Hoffman Estates Learning Center.

9. Monthly royalties are paid based upon the number of students enrolled at my learning center each month.

10. In May 2007, Kumon began having substantial problems with its "E-file" record keeping and franchisee reporting system, which I use to report my enrollment levels.

11. Kumon told me that it had corrected most of the problems, but In October 2007, I discovered that new problems arose.

12. In September and October of 2007, I communicated with Kumon by telephone and sent them facsimiles letting them know that when my employees and I entered a September date for our students' enrollment, Kumon's E-File system was recording the students' enrollment with October 2007 dates.

13. Due to the E-file problems, we were required to re-enter a substantial amount of information into the system.

14. On October 4, 2007, Ronald Conran, Kumon's Chicago branch leader, and several other Kumon representatives arrived at my Hoffman Estates teaching location at 6:25 p.m. for an unannounced inspection.

15. Upon arrival, Kumon inspected the business records and confronted and photographed me, my employees and parents of some of the students.

16. Despite the confrontational approach being taken by Kumon, I attempted to be as accommodating as possible.

17. I made all documents and materials available for full inspection.

18. Kumon then sought to leave the business premises with the business' original books and records, despite the fact that the franchise agreement only provides a right to "inspection", not possession, of the records.

19. My husband and I explained to Mr. Conran that the original records were important for the ongoing operation of the business and could not leave the Center at that time.

20. At approximately 7:30 p.m. on October 4, 2007, we asked Mr. Conran and the other Kumon representatives to leave the Center as we needed to go home.

21. I offered to open the Center again for Kumon the following day, as early as 8 a.m.

22. Mr. Conran refused to accept my offer to return early the following day and refused to leave the premises unless they were allowed to take with them the original documents.

23. Mr. Conran and the other Kumon representatives refused to leave the premises and we were forced to contact the Hoffman Estates Police Department.

24. Mr. Conran and the other Kumon representatives left the Learning Center only after the Police arrived and asked them to leave.

25. After communication and correspondence between my attorney and counsel from Kumon's legal department, Robert Lichtenstein, arrangements were agreed upon for Kumon to bring portable copiers to the Center to copy documents.

26. On November 19, 2007, attorney Lichtenstein from Kumon sent a letter to my business claiming to terminate my franchise agreement "with no opportunity to cure", alleging that we intentionally underreported, failed to report or misrepresented students enrolled at the Learning Center. A copy of the letter is attached hereto as <u>Exhibit B</u>.

27. The letter included a list of students which Kumon claimed were not properly reported.

28. I reviewed my records and found all of the students on the list properly reported.

29. My attorney then sent a letter to attorney Lichtenstein denying Kumon's right to terminate and requesting documentation regarding the alleged misreporting. A copy of the letter is attached hereto as <u>Exhibit C</u>.

30. Kumon failed and refused to provide any further explanation or to respond to our requests for additional information regarding the alleged reporting problems until my attorney received a letter sent by attorney Lichtenstein regular first-class mail on December 20, 2007. Attached to the letter were spreadsheets purporting to show further detail about Kumon's allegations of misreporting. A copy of the letter and spreadsheets are attached hereto as <u>Exhibit D</u>.

31. I have reviewed Kumon's spreadsheets and find Kumon's assumptions and conclusions to be absolutely false.

32. The list identifies sixty-one (61) students from my learning center.

33. For each student on the list, Kumon identifies a certain month or months that it claims the student was attending my learning center without being listed as enrolled in my reports to Kumon.

34. My initial review of the spreadsheet has identified the manipulation and obvious errors in all of Kumon's assumptions:

    a. Twenty-nine (29) of the students identified by Kumon were new student enrollments during the E-File problems in September and October 2007. The E-file problems were caused exclusively by Kumon's reporting system and had nothing to do with my data submissions, which were correct. All 29 students were identified in my reports to Kumon as

-4-

enrolled on the correct dates, but the Kumon E-file system had recorded the data incorrectly. On several occasions, I communicated with Kumon's computer department about the problems. Some of that communication is attached hereto as <u>Exhibit E</u>.

b. Seventeen (17) of the students on Kumon's list had taken breaks from their studies at the learning center, and were properly identified as such in my reports to Kumon. Most had taken their breaks during the summer months of July and August. Kumon must know that many students at Kumon learning centers take breaks in their enrollment, especially in July and August.

c. For ten (10) of the students identified, Kumon falsely assumed that all of those students started their enrollment on the same date the parents filled out the application or obtained orientation. All ten of those students started their enrollment on a date later than the date of the application and were properly reported in accordance with Kumon's own instructions to franchisees.

d. I also properly reported the enrollment of the remaining students on the list. In its effort to try to make a case for termination, Kumon made false and quite ridiculous assumptions about those students' enrollment dates. For instance, when a parent corrected its enrollment form to conform to the true date of enrollment, after an error or a change in a parent's decision, Kumon incorrectly assumed that those students had attended my learning center, but were not reported as students. Some of these students

were not even in the country during the dates that Kumon alleged they were attending classes at my learning center.

35.　Over the last couple weeks, I contacted most of the parents of the students on Kumon's list to confirm the information in my records. Although my graders, on a few occasions, may have filed their grading of some of the students' work during months while the students were on break, Kumon cannot correctly assume that the student was not on break. Thus far, all parents have confirmed that data in my records.

36.　Based on my initial review, I have found that all of my reports were accurate and that every assumption made by Kumon to prepare its list was absolutely false.

37.　Based on Kumon's prior knowledge and the fact that Kumon could not have made any effort to contact parents or otherwise gain support for its assumptions, I have to assume that Kumon's actions are an intentional and bad faith effort to destroy me.

38.　Kumon's false and unfair actions seeking to destroy me and my business have harmed my health and I have lost a significant amount of weight.

39.　I never made an assignment for the benefit of creditors, never abandoned the franchise, was never convicted of a felony and never repeatedly failed to comply with the terms of the franchise agreement.

40.　On December 14, 2007, Ron Conran of Kumon sent a letter to my customers informing them of the January 31, 2008 effective date of Kumon's termination of my franchise. The letter also told the parents that they will need to transfer to another Kumon location and that they could obtain a waiver of registration fees and a one free month tuition voucher if they transferred to another Kumon center. A copy of the December 14, 2007 letter is attached hereto as Exhibit F

41. This contact with my customers has harmed my business and will only get worse with any additional contact by Kumon with the parents. Kumon has also de-listed me from its website and denied me access to the system.

42. I have also learned that Kumon is planning to open a competing learning center in a neighboring town to Hoffman Estates and that Kumon expected to boost enrollment at that center by closing my center.

43. Without the protection of an injunction preventing closing of my Kumon Learning Center, Steps To Success, Inc. will be forced to close its business while it awaits final judgment.

44. The revenue generated from the Kumon Learning Center is the only source of revenue for Steps To Success, Inc. and me.

45. Steps To Success, Inc. would be unable to finance its lawsuit without the revenues from the business that Kumon is threatening to destroy.

46. If the learning center is closed, even for a few weeks, it will irreparably destroy the goodwill that Steps To Success, Inc. has developed in its business and damages such as lost business profits likely will be difficult to calculate.

47. The unlawful conduct of Kumon, as set forth in the Complaint, including its efforts to terminate and its statements to parent customers, caused Steps To Success, Inc. to suffer substantial damages and will continue to cause substantial damages.

48. Without the preliminary injunction, there is a clear and present danger that Steps To Success, Inc. will become insolvent with no available recourse against Kumon.

Signed under the penalties of perjury this __3__ th day of January 2008.

-8-

                                                           _/s/ Pallavi Shah_
                                                           Pallavi Shah